**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**
**CASE NUMBER:**

| | |
|---|---|
| Progressive Northern Insurance Company,<br><br>                                 Plaintiff,<br><br>v.<br><br><br>Brian Hawkey and Wynne Outlaw, as Personal Representative of the Estate of Hayden Hawkey,<br><br>                                 Defendants. | **COMPLAINT**<br>**(Declaratory Judgment)**<br>**(Non-Jury)** |

Plaintiff, Progressive Northern Insurance Company (hereinafter "Progressive") seeks declaratory relief to determine the rights of the parties, and alleges and shows as follows:

## JURISDICTION & VENUE

1.     Progressive is an insurance company organized and existing under the laws of the State of Wisconsin with its principal place of business in the State of Ohio and is authorized to sell insurance and does sell insurance in South Carolina.

2.     Upon information and belief, decedent Hayden Hawkey was, at the time of her death, a citizen and resident of Charleston County, South Carolina.

3.     Upon information and belief, defendant Wynne Outlaw is the duly appointed Personal Representative of the Estate of Hayden Hawkey, and is deemed a citizen only of the State of South Carolina, the state of domicile of the decedent Hayden Hawkey at the time of her death, pursuant to 28 U.S.C. § 1332(c)(2).

4.     Upon information and belief, Defendant Brian Hawkey is a citizen and resident of Charleston County, South Carolina.

1

5. Upon information and belief, the accident giving rise to this action occurred in Williamsburg County, South Carolina.

6. This action is brought under the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and Rule 57, Fed. R. Civ. P.; there is a real and justiciable controversy between the parties, and by these proceedings Plaintiff asks this Court to inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth below.

7. The amount in controversy exceeds Seventy-Five Thousand and No/100 ($75,000.00) Dollars, exclusive of interests and costs, and there is complete diversity of citizenship; therefore, this Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1332(a)(1).

8. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

### A. The Progressive Policy

9. Progressive issued an automobile liability policy, Policy No. 946036381 to Brian Hawkey, effective from February 1, 2024, to February 1, 2025 (the "Policy").

10. The Policy lists one insured vehicle with underinsured motorist ("UIM") limits of $100,000 per person and $300,000 per accident for bodily injury, and $50,000 each accident for property damage.

11. The Policy also lists Medical Payments coverage limits of $5,000 each person. A copy of the Progressive Policy is attached hereto as Exhibit A.

12. The Policy only provides coverage to persons qualifying as an "insured person" for liability arising out of certain risks under the insuring agreement and limits certain risks through

2

the policy limitations.  Progressive craves reference to the Policy for all of the terms, conditions, and provisions therein and incorporates them by reference herein.

13.     The Policy provides in pertinent part:

### GENERAL DEFINITIONS
***

1. "**Additional auto**" means an **auto you** become the owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page** if:
   a. **we** insure all other **autos you** own;
   b. the **additional auto** is not covered by any other insurance policy;
   c. **you** notify **us** within 30 days of becoming the owner of the **additional auto**; and
   d. **you** pay any additional premium due.
   An **additional auto** will have the broadest coverage **we** provide for any **auto** shown on the **declarations page**. If **you** ask **us** to insure an **additional auto** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.

2. "**Auto**" means a land motor vehicle:
   a. of the private passenger, pickup body, or cargo van type;
   b. designed for operation principally upon public roads;
   c. with at least four wheels; and
   d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
   However, "**auto**" does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

5. "**Covered auto**" means:
   a. any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
   b. any **additional auto**;
   c. any **replacement auto**; or
   d. a **trailer** owned by **you**.
   ***

10. "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both:
    a. listed in the "Drivers and household residents" section on the **declarations page**; and
    b. not designated as either an "Excluded" or a "List Only" driver.

11. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage or adoption, and includes a ward,

3

stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.

12. "**Replacement auto**" means an **auto** that permanently replaces an **auto** shown on the **declarations page**. A **replacement auto** will have the same coverage as the **auto** it replaces if the **replacement auto** is not covered by any other insurance policy. However, if the **auto** being replaced had coverage under Part IV—Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV—Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.

\*\*\*

14. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto** and not being used:
    a. for commercial purposes;
    b. as an office, store, or for display purposes; or
    c. as a passenger conveyance.

17. "**You**" and "**your**" mean:
    a. a person shown as a named insured on the declarations page; and
    b. the spouse of a named insured if residing in the same household at the time of the loss.

\*\*\*

## PART II—MEDICAL PAYMENTS COVERAGE
## INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of a **motor vehicle** accident because of **bodily injury**:
1. sustained by an **insured person**; and
2. caused by that **motor vehicle** accident.

\*\*\*

**ADDITIONAL DEFINITIONS**

When used in this Part II:
1. "**Insured person**" means:
    a. **you**, a **relative**, or a **rated resident**:
        (i) while **occupying** an **auto**; or
        (ii) when struck by a **motor vehicle** or a trailer while not **occupying** a self-propelled motorized vehicle; and

4

b.  any other person while **occupying** a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**.

***

**OTHER INSURANCE**

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person occupying** a vehicle or trailer, other than a **covered auto**, will be excess over any other **auto** insurance providing payments for **medical services**.

**PART III—UNINSURED/UNDERINSURED MOTORIST COVERAGE**

***

**INSURING AGREEMENT—UNDERINSURED MOTORIST COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of:

1.  an **underinsured motor vehicle** because of **bodily injury**:
    a.  sustained by an **insured person**
    b.  caused by an accident; and
    c.  arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**; or
2.  an **underinsured motor vehicle** because of **property damage**:
    a.  caused by an accident; and
    b.  arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**.

***

**ADDITIONAL DEFINITIONS**

When used in this Part III:

1.  "**Insured person**" means:
    a.  **you**, a **relative**, or a **rated resident**;
    b.  any person while operating a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
    c.  any person **occupying**, but not operating, a **covered auto**; and
    d.  any person entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a., b., or c. above.

2.  "**Underinsured motor vehicle**" means a land motor vehicle or trailer of any type to which liability insurance or a bond applies at the time of the accident with limits of liability that equal or exceed the minimum

5

amounts required by the South Carolina motor vehicle financial responsibility law, but which are less than the amount of damages sustained by the **insured person** in the accident.

An "**underinsured motor vehicle**" does not include any vehicle or equipment:

a.   operated on rails or crawler treads;
b.   designed mainly for use off public roads, while not on public roads;
c.   while located for use as a residence or premises; or
d.   that is an **uninsured motor vehicle**.

\*\*\*

**OTHER INSURANCE**

If there is other applicable uninsured or underinsured motorist coverage, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, when **you**, a **relative**, or a **rated resident** are **occupying** a motor vehicle other than a **covered auto** and sustain **bodily injury** covered under this Part III, **our** coverage shall be excess to the coverage applicable to the motor vehicle that **you**, the **relative**, or the **rated resident** are **occupying**, and **our** total limit of liability under this policy shall not exceed **our** limit of liability for one **auto**.

\*\*\*

B.   **The September 12, 2024, Accident**

14.   On September 12, 2024, Hayden Hawkey was operating a Kawasaki Prairie 300 four-wheeler on or near Garden Road in Williamsburg County, South Carolina when a collision occurred in which the four-wheeler crashed into a tree.

15.   The September 12, 2024, collision also involved a motor vehicle operated by Lisa Hastings.

16.   Upon information and belief, Lisa Hastings maintained an automobile insurance policy with Allstate which provides liability limits of $250,000 per person for bodily injury and $100,000 per accident for property damage.

17.   As a result of the collision, Hayden Hawkey sustained injuries and was transported to MUSC Black River Hospital in Kingstree, South Carolina, where she subsequently died from her injuries.

C. **Hayden Hawkey's Residency**

18.     Brian Hawkey, the named insured under the Policy, is Hayden Hawkey's father.

19.     At the time of the accident, Hayden Hawkey was, upon information and belief, exclusively residing with her mother Wynne Outlaw at 1329 Pherigo Street, Mount Pleasant, South Carolina.

20.     Upon information and belief, Hayden Hawkey was not residing with her father Brian Hawkey at 637 Ellis Street, Mount Pleasant, South Carolina, at the time of the accident.

21.     Hayden Hawkey was not listed as a driver or household resident on the Policy issued to Brian Hawkey.

22.     Upon information and belief, Hayden Hawkey's mother, Wynne Outlaw, maintained an automobile policy with State Farm Insurance with UIM limits of $250,000 per person and $500,000 per accident for bodily injury, and $50,000 for property damage.

23.     Upon information and belief, Wynne Outlaw, as Personal Representative of the Estate of Hayden Hawkey, has or will seek UIM coverage under the Policy issued to Brian Hawkey for the September 12, 2024, accident.

## FOR A FIRST DECLARATION

24.     Plaintiff repeats and re-alleges the paragraphs set out above as if set forth fully verbatim below.

25.     The Policy states that Progressive will only pay for damages that an "insured person" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle."

26.     Part III of the Policy defines an "insured person" to mean (a) "you," a "relative," or a "rated resident;" (b) any person while operating a "covered auto" with the permission of "you,"

7

a "relative," or a "rated resident;" (c) any person "occupying," but not operating, a "covered auto;" and (d) any person entitled to recover damages covered by this Part III because of bodily injury sustained by a person described in a., b., or c.

27.     Part II—Medical Payments Coverage—of the Policy defines an "insured person" to mean (a) "you," a "relative," or a "rated resident" while "occupying" an "auto" or when struck by a "motor vehicle" or a trailer while not "occupying" a self-propelled motorized vehicle; and (b) any other person while "occupying" a "covered auto" with the permission of "you," a "relative," or a "rated resident."

28.     The Policy defines "relative" to mean a person residing in the same household as "you," and related to "you" by blood, marriage or adoption, including a ward, stepchild, or foster child. It also includes "[y]our" unmarried dependent children temporarily away from home if they intend to continue to reside in "your" household.

29.     The Policy defines a "covered auto" to mean (a) any "auto" or "trailer" shown on the declarations page for the coverages applicable to that "auto" or "trailer;" (b) any "additional auto;" (c) any "replacement auto;" or (d) a "trailer" owned by "you."

30.     Upon information and belief, at the time of the accident, Hayden Hawkey did not reside with her father Brian Hawkey at 637 Ellis Street, Mount Pleasant, South Carolina.

31.     Further, Hayden Hawkey was not listed as a driver or household resident on the Policy issued to Brian Hawkey.

32.     Therefore, Hayden Hawkey did not qualify as a "resident" under the Policy issued to Brian Hawkey at the time of the September 12, 2024, accident.

33.     Accordingly, Hayden Hawkey did not qualify as an "insured person" under the Policy issued to Brian Hawkey at the time of the September 12, 2024, accident.

34.     Additionally, the Kawasaki Prairie 300 four-wheeler operated by Hayden Hawkey is not listed on the Policy's declarations page as a covered auto.

35.     Nor does the Kawasaki Prairie 300 four-wheeler qualify as an "additional auto," "replacement auto," or "trailer" as defined by the Policy.

36.     Accordingly, the Kawasaki Prairie 300 four-wheeler does not qualify as a "covered auto" under the Policy.

37.     Therefore, Progressive respectfully requests that this Court declare that the Policy does not provide UIM or Medical Payments coverage for Wynne Outlaw's claims, as Personal Representative of the Estate of Hayden Hawkey, arising out of the September 12, 2024, accident.

## FOR A SECOND DECLARATION

38.     Plaintiff repeats and re-alleges the paragraphs set out above as if set forth fully verbatim below.

39.     Part II—Medical Payments Coverage—of the Policy provides that "[i]f there is other applicable 'auto' medical payments insurance, 'we' will pay only 'our' share of the loss. 'Our' share is the proportion that 'our' limit of liability bears to the total of all applicable limits.

40.     Part III—Uninsured/Underinsured Motorist Coverage—of the Policy provides that "[i]f there is other applicable uninsured or underinsured motorist coverage, 'we' will pay only 'our' share of the damages. 'Our' share is the proportion that 'our' limit of liability bears to the total of all available coverage limits."

41.     Upon information and belief, Hayden Hawkey's mother, Wynne Outlaw, maintained an automobile policy with State Farm Insurance with UIM limits of $250,000 per person and $500,000 per accident for bodily injury, and $50,000 for property damage.

42.     Therefore, if Hayden Hawkey was a resident of Brian Hawkey's household at the time of the accident, then Plaintiff would be obligated to pay only its proportional share of the single highest applicable limit of UIM or medical payments available for the September 12, 2024, accident.

**WHEREFORE**, Progressive respectfully requests that this Court inquire into these matters and declare that Hayden Hawkey did not qualify as an "insured person" as defined under the Policy at the time of the September 12, 2024, accident, such that the Policy does not provide UIM or medical payments coverage for the Estate of Hayden Hawkey's damages arising out of the September 12, 2024, accident; or that, alternatively, if Hayden Hawkey was a resident of Brian Hawkey's household at the time of the September 12, 2024, accident, that Progressive is only liable for its proportionate share of the loss.

MURPHY & GRANTLAND, P.A.


s/J.R. Murphy
J.R. Murphy, Esquire (Fed. Bar # 3119)
Scarlett B. Smith, Esquire (Fed. Bar #14565)
P.O. Box 6648
Columbia, South Carolina 29260
(803) 782-4100
Email:  jrmurphy@murphygrantland.com
Email:  ssmith@murphygrantland.com
*Attorney for Progressive Northern Insurance Company*

Columbia, South Carolina
July 14, 2026

10